**Brian S. SHAUT, Petitioner,**

v.

**Floyd BENNET, Superintendent, Elmira Correctional Facility, Respondent.**

**No. 01–CV–6315L(FE).**

United States District Court, W.D. New York.

Aug. 29, 2003.

Brian S. Shaut, Elmira, NY, Pro se.

Brooks T. Baker, Steuben County Attorney, Bath, NY, Charles D. Steinman, New York State Attorney General, Rochester, NY, for Respondent.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Petitioner Brian S. Shaut ("Shaut") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Steuben County Court of first degree manslaughter and third degree criminal possession of a weapon. For the reasons set forth below, Shaut's § 2254 petition is dismissed.

### FACTUAL BACKGROUND

Shaut fatally stabbed Irving Farrow ("Farrow") on August 12, 1996, during a struggle which occurred at the trailer of Stacey Overhiser ("Overhiser"), Shaut's estranged girlfriend. The People claimed that it was intentional murder and indicted Shaut on two counts of murder (Penal Law ("P.L.") § 125.25(1), (3)), two counts of burglary (P.L. § 140.30); and one count of criminal possession of a weapon (P.L. § 265.02). Shaut asserted that he acted in self-defense, and that Farrow, although unarmed, was the initial aggressor.

Shaut was tried before a jury in Steuben County Court (Bradstreet, J.) on August 12 to August 18, 1997. The evidence showed that Shaut and Overhiser had been living together at the trailer where Farrow was stabbed, but that Shaut had moved out on July 3, 1996 and taken an apartment nearby. There was testimony that Shaut continued to support Overhiser financially even after they stopped living together. The landlord testified that Shaut was the individual to whom she initially leased the trailer, and that she considered Shaut to be the primary tenant. Shaut claims that he and Overhiser continued an intimate relationship between July 3, 1996 and the date of the stabbing, although Overhiser denied it at trial.

Defense counsel sought to build a justification defense based on Shaut's voluntary statements to the state police immediately following the incident. Shaut told the police that he spent the evening of August 12, 1996 at a local tavern stewing over the situation with Overhiser. Shaut was concerned that Overhiser was socializing with an unsavory crowd of people and not caring properly for their two year-old son, Wyatt.

Eventually, Shaut's curiosity got the better of him. Arming himself with a buck knife, he went to stake out the trailer where Overhiser was living. Once there, he saw Farrow, a black man, inside the trailer with Overhiser. Shaut claimed that since nothing appeared amiss, he decided to leave. Just then, Trina Velasquez ("Velasquez"), a friend of Overhiser's, drove up in her car with several other people.

Shaut stated that Velasquez was vomiting and crying and that the people accompanying her "were yelling and carrying on." Velasquez corroborated this testimony, stating that Farrow, who was her boyfriend, left the trailer and began beating her. Velasquez realized Shaut was outside when she heard Shaut tell Farrow to stop what he was doing.

At that point, Shaut claims that he "just lost it." Shaut told the police that he unsheathed the knife, charged inside the trailer, and told Overhiser that he was going to take Wyatt. According to Overhiser, however, Shaut cornered her in the bathroom with the knife and demanded "Where's the [n-word], bitch?" Trial Transcript ("Tr.") at 225. Upon hearing Farrow in the living room "breaking up things," Shaut decided to go "scare him with the knife."

Shaut claimed that Farrow rushed him and "took [him] down" and that the "knife went into him into his stomach and chest." Because Farrow "didn't stop," Shaut "held

on to him and stabbed him in the back twice and he stopped fighting[.]" *See* Tr. at 369–73. Overhiser, who witnessed part of the struggle before running to get help, testified that Farrow was on top of Shaut. Overhiser did not see a weapon in Farrow's hands. There was no testimony that Farrow in fact was armed.

The defense introduced into evidence Shaut's statement to the state police, whom he flagged down for help after the stabbing, as well as notes from a state trooper's interview with the Shaut. Shaut told the police that he did not want to hurt anybody that night, that he had brought the knife because Overhiser allegedly had threatened to have him shot if he tried to take his son, and that Farrow had attacked him first.

The medical evidence established that Farrow was stabbed eight times in the chest, back, and face. Farrow also bore cuts on the palms of his hands. The medical examiner and the defense's expert witnesses both opined that the placement of the wounds indicated that a struggle occurred between the two men. Neither could say definitively who the initial aggressor was.

At the close of the proofs, the trial court granted defense counsel's application to dismiss the burglary and felony murder charges. The court determined that Shaut had the legal right to enter the trailer on August 12, 1996 and therefore a burglary charge could not stand against him. Tr. at 443. Later, the court clarified its ruling, noting that it did *not* find that the trailer was Shaut's home. *Id.* at 455.

The jury returned a verdict convicting Shaut of one count of first degree manslaughter and one count of criminal possession of a weapon. He was sentenced on November 24, 1997 to a term of 12 ½ to 25 years on the manslaughter charge and 2⅓ to 7 years on the weapons charge, those sentences to be served concurrently.

## PROCEDURAL HISTORY

Through new counsel, Shaut appealed to the Appellate Division, Fourth Department which unanimously affirmed his conviction in a memorandum decision entered May 7, 1999. *People v. Shaut*, 261 A.D.2d 960, 690 N.Y.S.2d 372 (4th Dept.1999). The Court of Appeals denied leave to appeal on September 10, 1999. *People v. Shaut*, 93 N.Y.2d 1045, 697 N.Y.S.2d 877, 720 N.E.2d 97 (1999).

Shaut challenged his conviction in a collateral motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 alleging that his trial counsel was constitutionally ineffective. Judge Bradstreet summarily denied the motion in an order entered June 23, 1999. Shaut did not seek leave to appeal to the Fourth Department regarding the denial of that motion. Shaut filed a second C.P.L. § 440.10 motion alleging numerous grounds which Judge Bradstreet similarly denied without comment in an order entered February 29, 2000. The Fourth Department did not grant Shaut permission to appeal the denial of the second C.P.L. § 440.10 motion.

Shaut's federal habeas petition raises the following grounds for relief: (1) the trial court failed to order a hearing *sua sponte* on defendant's mental capacity; (2) newly discovered evidence proved that a prosecution witness perjured herself; (3) the prosecution failed to provide certain *Brady/Rosario* materials; (4) he did not receive the effective assistance of trial counsel; (5) the trial court's charge on intent improperly shifted the burden of proof; (6) the Appellate Division improperly denied leave to appeal denial of his C.P.L. § 440.10 motions; (7) the trial court failed to instruct the jury not to consider

the dismissed burglary and felony murder charges; (8) the trial court failed to charge certain lesser included offenses; (9) the trial court erred in giving a voluntariness charge concerning Shaut's statements to the police where neither the prosecution nor the defense requested such a charge; and (10) the prosecutor committed misconduct.

## DISCUSSION

### Exhaustion

Respondent raises the failure to exhaust with regard to Shaut's claim that the trial court erroneously issued a *Sandstrom* instruction on the element of intent which impermissibly shifted the burden of proof. Shaut raised this claim as one of the predicates for his ineffective assistance claim in his second C.P.L. § 440.10 motion, claiming that his attorney was deficient in failing to object to the *Sandstrom* charge. He did not raise it as an independent claim.

█ In order to have fairly presented the claim to the state courts, if not in an explicit argument, Shaut must have provided both the factual and legal premises of his claim. If the federal habeas court could rule on a claim "whose fundamental legal basis was substantially different from that asserted in state court," the "chief purposes of the exhaustion doctrine would be frustrated." *Daye v. Attorney General of New York*, 696 F.2d 186, 191–92 (2d Cir.1982).

█ Here, the state court did not make any factual or legal findings regarding Shaut's ineffectiveness claim premised on his attorney's failure to object to the alleged *Sandstrom* instruction, and merely denied the claim in a summary order. The absence of any factual or legal findings in the order denying Shaut's C.P.L. § 440.10 motion makes it difficult to determine

whether the "fundamental legal basis" of the *Sandstrom* claim was presented to the state court. However, it seems to this Court that in deciding the failure-to-object claim, the trial judge necessarily would have examined the wording of the instruction in order to determine whether it was erroneous; if the language of the charge in fact was proper, then Shaut's attorney's failure to except to it could not be deficient, nor could it have caused him prejudice. Thus, the "fundamental legal basis" of the present *Sandstrom* claim, that is, whether the trial court's jury instruction improperly shifted the burden of proof on intent, was presented to the state court below. Consequently, I find that Shaut has satisfied the exhaustion requirement as to this claim and it may be considered on habeas review.

With regard to Shaut's seventh claim concerning the trial court's alleged failure to instruct the jury not to consider the dismissed charges, respondent asserts that it, too, is unexhausted because Shaut did not raise it either on direct appeal or in a collateral attack. I agree with respondent that Shaut did not assert this claim in any form when he sought review of his conviction from the state courts, and it therefore is unexhausted. *See Daye*, 696 F.2d at 192–94.

However, Shaut cannot return to state court to exhaust this claim since New York's state procedural rules would preclude it from being considered on direct or collateral review. *See* C.P.L. §§ 470.05 (contemporaneous objection rule); 440.10(2)(c) (court must deny motion based on claim that could have been raised on direct appeal but unjustifiably was not). As a result, it is deemed exhausted. *See Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir.1991). It may be considered by this Court though only if there is cause for, and prejudice resulting from, the procedural

default. *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *accord Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990). Shaut has not attempted to show cause or prejudice in his petition, nor can he demonstrate either on the facts presented here. Moreover, Shaut cannot show that he is actually innocent of the charges against him so as to justify finding that a fundamental miscarriage of justice would occur if the Court does not consider his claim. *See Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Therefore, this claim is procedurally barred and may not be considered on habeas review.

In any event, I note that this claim is without merit. I reviewed the trial court's entire charge to the jury,[1] and it is apparent that Shaut has misinterpreted the challenged instruction. The jury properly was directed to exclude the burglary and felony murder charges from its deliberations. Shaut, however, takes particular issue with the following statement in the jury instruction: "You should not try to figure out if [the dismissal of the burglary or felony murder charges] means anything. It doesn't." Petitioner's Habeas Memorandum ("Pet'r Mem.") at 36. Shaut argues that as a result of this comment, the "jury

likely concluded that the burglary charge was dismissed on some technicality ... when in fact, it was dismissed because the court concluded that petitioner was licensed or privilege (sic) to be in the dwelling." *Id.*

■ It is true that the trial court dismissed the burglary charge because it found that Shaut was licensed to be in Overhiser's trailer. Tr. at 443. However, the court specifically refused to rule that the trailer was Shaut's home. *Id.* at 455. ("I didn't rule it was his home. I ruled he had the right to enter it."). Therefore, the dismissal of the burglary charge did not establish the "dwelling" element of the justification defense, making the disposition of that charge irrelevant to the jury's determinations regarding the remaining offenses.

Respondent does not challenge any of the other grounds in Shaut's petition on the basis of exhaustion, and I find that they have been exhausted and are properly before this Court.

*Merits of the Petition*

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of

---

1. The trial court charged the jury as follows: "At this time I'm advising you that when the case is submitted to you you will be deliberating over two charges ... the intentional murder charge ... and the fifth count in the indictment which is that the defendant possessed a dangerous knife with intent to use the same unlawfully against another person. The other three charges had to do with the burglary and the court as a matter of law has dismissed the charges with regard to burglary. I advise you and caution you that the dismissal of those charges with regard to the burglary was a matter of law to be determined by the court. The decision by the court in that regard has no bearing on the ultimate decision to be reached by you with regard to the first and fifth counts of the indictment. You should not try to figure out if it means anything. It doesn't. It has no bearing whatsoever on what you have to do. As judges of the facts you have to make factual determinations with respect to both of the other counts and render your verdict accordingly, so I'm telling you that now so that you would not be expecting to hear something about those charges that you were told about early on in the proceedings and not hear and wonder why. That is the reason as I indicated back in the preliminary instructions I gave you there are some things the court does as a matter of law which has nothing to do withy what your function is and your function of course is to determine what the facts are and apply those facts to the law as I explain the law to you." Trial Tr. at 471–72.

his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in State court. 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### Trial Court's Failure to Order a Competency Hearing Sua Sponte

Shaut contends that he was "denied his rights under the United States Constitution when the trial court failed to order a mental examination, *sua sponte,* when it became clear that petitioner was possibly an incapacitated person." Pet'r Mem. at 15. Shaut alleges that the "pre-sentence report is replete with references to the possibility that petitioner was himself an 'incapacitated person' and that alone ... should have triggered [the] Court to ... *sua sponte* (sic) a mental evaluation of petitioner before passing sentence on petitioner." *Id.* at 16. In the next breath, however, Shaut argues that a hearing "would have been futile" since his "years of abuse of alcohol" impaired his ability to participate meaningfully in his defense at trial, and therefore the "judgement of conviction should have been vacated" pursuant to C.P.L. § 440.10(1)(e). *Id.* at 17.

■ "Due process requires that a hearing must be held whenever the facts or events presented to the trial court raise a *bona fide* doubt as to a defendant's competency." *Chisolm v. People,* 182 F.3d 898, 1999 WL 385764, at *2 (2d Cir.1999) (citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). The Supreme Court has defined competency by asking "whether the [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). A hearing is not required, however, in the absence of reasonable cause to question a defendant's competency. *See, e.g., United States v. Kirsh,* 54 F.3d 1062, 1070 (2d Cir.1995) (citing *Pate,* 383 U.S. at 385–86, 86 S.Ct. 836). The determination as to whether there is reasonable cause to doubt a defendant's fitness to stand trial is vested in the discretion of the trial judge. *See, e.g., United States v. Nichols,* 56 F.3d 403, 414 (2d Cir.1995) (citing *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)).

Shaut relies heavily on the pre-sentence report which details a history of grief-related depression and behavioral problems following his father's untimely death. The pre-sentence report also notes that Shaut was in "dire need of mental health counseling" and that his alcohol abuse detrimentally affected his "already unstable mental state." Exhibit ("Ex.") B to Petitioner's 2000 C.P.L. § 440.10 Motion at 15, Respondent's Exhibits. However, Shaut's history of mental impairment alone does not require the trial court *sua sponte* to order a competency hearing. *See Lopez v. Walker,* 239 F.Supp.2d 368, 374 (S.D.N.Y. 2003) (pre-sentence report referred to prior suicide attempts, hospitalization, and the use of the drug Sinequan, and stated that evaluation of petitioner's "present emotional functioning" would be "appropriate" in light of his claim of a prior psychiatric history; however, this evidence alone did not require trial court to make further inquiry into petitioner's competency).

In spite of the pre-sentence report's references to Shaut's mental health issues, it is devoid of any indication that Shaut was incoherent or irrational. Upon my review of the record, I find no factors present

during trial or at sentencing which would have called Shaut's competency into doubt. The trial court therefore would have detected no basis upon which to question Shaut's competence to participate in his criminal proceedings or to serve a term of incarceration in state prison, and it was not required to order a hearing *sua sponte*. *See, e.g., United States v. Kirsh*, 54 F.3d at 1070.

Furthermore, neither Shaut nor his attorney raised any question concerning his competency at trial or at sentencing. *See Davis v. Keane*, 2001 WL 13288, at * 3 (E.D.N.Y. Jan.4, 2001) (citing *Drope*, 420 U.S. at 177 n. 13, 180, 95 S.Ct. 896;), *aff'd* 45 Fed.Appx. 31, 2002 WL 2009559 (2d Cir.2002). I find it telling that Shaut's attorney, who would have read the pre-sentence report and who had close contact with the defendant, never sought a competency hearing or even registered concern about Shaut's competency. Moreover, the pre-sentence report indicates that "Shaut was evaluated by a psychologist during the course of the legal proceedings of the present offense." Ex. B at 13. Shaut does not allege that the evaluator deemed him mentally incapacitated as a result of the examination, nor do I find any basis in the record for so concluding.

■ With this record before it, the state court presumably found no basis to question Shaut's competency during the trial or sentencing phases of the criminal proceedings. In rejecting Shaut's claim that the trial court abused its discretion in failing to order a competency examination, the state court did not unreasonably apply clearly established Federal law. *See*

*Davis*, 2001 WL 13288 (citing *Silverstein v. Henderson*, 706 F.2d 361, 367 (2d Cir. 1983) ("New York law provides the procedural protection *Pate* [*v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)] requires.")); *Dusky*, 362 U.S. at 402, 80 S.Ct. 788.

### Sandstrom Charge

■ Shaut argues that the "trial court issued a *Sandstrom*[2] charge to the jury that defendant intended the 'logical and natural consequences of his acts' thus shifting the burden of proof to the defense." Pet'r Mem. at 31. At Shaut's trial, the judge instructed the jury as follows:

> You are *permitted to infer* that the defendant intended the logical and natural consequences of his actions, *but in the final analysis whether or not the People have proved to your satisfaction beyond a reasonable doubt* that the defendant acted intentionally is a question of fact for the jury to be decided upon the basis of all the evidence in the case.

Tr. at 536. (emphasis supplied.) As the italicized language makes clear, the court's instruction did not shift the burden of proof to Shaut. *See Francis v. Franklin*, 471 U.S. 307, 316–17, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *accord, e.g., Erdheim v. Greiner*, 22 F.Supp.2d 291, 297–98 (S.D.N.Y.1998) (charge stating that "the law also permits you, but does not require you to infer that a person intends the natural and probable consequences of his actions" did not violate *Sandstrom* ).

**2.** In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that a shifting of the burden as to an essential element of the crime charged was unconstitutional in light of its earlier holding in *In re Winship*, 397 U.S. 358,

90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that a defendant may not be convicted of a crime unless the prosecution carries its burden of proving beyond a reasonable doubt each element of the crime charged.

### Rosario/Brady Violation

As an initial matter, I find that to the extent Shaut's petition requests relief based on a violation of the *Rosario* rule, such a claim is not cognizable on habeas review. *Lyon v. Senkowski,* 109 F.Supp.2d 125, 139 (W.D.N.Y.2000); *Sutherland v. Walker,* 1999 WL 1140870, at *9 (S.D.N.Y. Dec. 10, 1999). Unlike a *Brady* claim, a *Rosario* claim is solely a New York state law right. *Lyon,* 109 F.Supp.2d at 139; *see also Copes v. Schriver,* 1997 WL 659096, at *4 (S.D.N.Y. Oct. 22, 1997) (*Rosario* violation does not establish a constitutional violation).

Shaut's *Brady* claim may be reviewed by the habeas court, however. In *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Supreme Court stated that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either wilfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

The gravamen of Shaut's *Brady* claim is that the prosecution knowingly withheld certain witness statements which allegedly establish that he and Overhiser were having a sexual relationship at the time of the stabbing, information which he argues was critical to his defense. *See* Pet'r Mem. at 23. There are three categories of documents alleged to have been suppressed.

First, Shaut claims that the prosecution did not disclose the Grand Jury testimony of Stacey Overhiser and Trina Velasquez. As evidence of the prosecution's malfeasance, Shaut claims that the case file forwarded to him by his appellate attorney after the completion of his direct appeal omitted "pages 1–38 and 44–52 [of the Grand Jury transcripts] which upon information and belief, represents the Grand Jury testimony of Stacey Overhiser and Trina Velasquez." Pet'r Mem. at 23. Shaut admits, however, that he received from his appellate attorney Overhiser's "recalled" testimony to the Grand Jury. *Id.*

■ When Shaut raised this claim on his second C.P.L. § 440.10 motion, the prosecutor averred that he provided the allegedly withheld Grand Jury testimony to the defense pursuant to his *Rosario* obligations. In addition, the prosecutor submitted to the trial court a list of materials provided to the defense prior to trial; this list was received as a court exhibit on August 11, 1997, the day before trial began. People's Trial Ex. 1, Respondent's Exhibits. It apparently contains the information Shaut now claims was withheld.[3] Moreover, defense counsel confronted Velasquez with her Grand Jury testimony and questioned Overhiser as to whether she had reviewed her Grand Jury testimony with the district attorney prior to testify. In light of the foregoing, the fact that Shaut purportedly did not receive certain documents from his appellate attorney does not suffice to show that the documents were not provided in the first instance by the prosecutor to his trial attorney. On these facts, I cannot find that a

---

**3.** The document is titled *People v. Brian Shaut, Rosario Materials.* With regard to Stacey Overhiser, the list indicates that the following materials were provided: "Supporting Deposition—2 pages; Incident Report by Trp. Eisenhart re 7/3/96—1 page (attached to arrest report); 9/10/96 & 1/28/97 GJ (sic)". The materials provided with respect to Trina Velasquez were "Supporting Deposition—1 page (attached to arrest report); 9/10/96 & 1/28/97 GJ (sic)".

*Brady* violation occurred with regard to the Grand Jury testimony.

■ Shaut also contends that the pre-sentence report "establishes that [Overhiser and Velasquez] stated that petitioner was having a sexual relationship with Ms. Overhiser between July 3rd and August 12th 1996." Pet'r Mem. at 24. The pre-sentence report comments that "[s]tatements made to the State Police suggested that even after Shaut moved out of the [trailer] just before the stabbing, Overhiser continued to have sexual relations with him." Ex. B to 2000 C.P.L. § 440.10 Motion at 15, Respondent's Exhibits. The report does not indicate who made these statements, however. Shaut claims that the report refers to Overhiser's and Velasquez's statements to the state police following in the incident. Pet'r Mem. at 24. First of all, the prosecutor has no *Brady* obligation to " 'communicate preliminary, challenged, or speculative information.' " *United States v. Diaz,* 922 F.2d 998, 1006 (2d Cir.1990) (quoting *United States v. Agurs,* 427 U.S. 97, 109 n. 16, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (citations omitted)); *accord United States v. Amiel,* 95 F.3d 135, 145 (2d Cir.1996). Secondly, the supporting depositions of Overhiser and Velasquez were made available to the defense. *See* Ex. 1. Presumably, those are the "[s]tatements made to the State Police" referred to in the pre-sentence report. Consequently, I cannot find that the People withheld any witness statements to the authorities.

Lastly, Shaut contends that "[his] friend, Erick Dickson, also had a conversation with the State Police and informed them of the relationship enumerated above." Pet'r Mem. at 24. There are no statements by an "Erick Dickson" on the list of materials provided by the prosecutor, and Shaut offers nothing but his own surmise as proof that such statements exist. On these facts, I am unable to discern a *Brady* violation relating to the alleged conversation between "Erick Dickson" and the State Police.

In any event, the Steuben County District Attorney has made available to the Court the supporting depositions given to the state troopers by both Overhiser and Velasquez, along with Overhiser's testimony from her initial appearance before the Grand Jury. Overhiser never stated to the police or to the Grand Jury that she was involved in a sexual relationship with Shaut, nor did Velasquez ever make such a statement. Thus, even if those witnesses' pre-trial statements were withheld, they would not have established Shaut's claim of a sexual relationship with Overhiser.

On the facts before me, I cannot find that there in fact was a withholding of any potentially exculpatory or impeaching materials by the prosecution. Lacking a critical element of a *Brady* violation, Shaut therefore cannot state a viable claim.

### Alleged Recantation by Prosecution Witness

Shaut contends that his conviction should be overturned because it was based on the perjured testimony of Stacy Overhiser. He alleges that the "People's star witness [Overhiser] has confessed that she lied at petitioner's trial because she received death threats from the alleged victim's family." Pet'r Mem. at 19. Shaut also argues that the prosecution knowingly allowed Overhiser to present perjured testimony, thereby depriving him of his right to a fair trial. He further accuses the prosecution of intentionally withholding Overhiser's pre-trial statements to the Grand Jury and the state troopers which allegedly would establish that she testified falsely. *Id.* at 22.

In its order denying Shaut's C.P.L. § 440.10 motion based on this alleged new-

ly discovered evidence, the state trial court did not make any factual findings with respect to Overhiser's credibility, let alone whether a recantation actually occurred. Thus, the usual question of the degree of deference to accord such a finding is inapplicable here. *See Channer v. Brooks,* 320 F.3d 188, 195 (2d Cir.2003) (*per curiam*) ("[W]here a state court does not resolve a question of fact, no presumption of correctness can possibly attach with respect to that issue."); *accord Ortega v. Duncan,* 333 F.3d 102, 106 (2d Cir.2003).

Shaut's mother, Suzanne Ackley ("Ackley"), submitted a sworn affidavit alleging that, after the trial, Overhiser said that (1) Shaut never struck her on the night of the incident, nor did he use any racial epithets that night; (2) she and Shaut "were having a relationship" as of the date of the incident and Shaut was sleeping over at the trailer "twice a week"; (3) Shaut paid the July rent; and (4) Shaut had not hit her during an argument on the day prior to the stabbing. *See* Ex. E to 2000 C.P.L. § 440.10 Motion, Respondent's Exhibits. If true, all of the foregoing statements directly contradict Overhiser's testimony at trial.

■■■ Motions for a new trial based upon newly discovered evidence are "granted only with great caution in the most extraordinary circumstances." *United States v. Di Paolo,* 835 F.2d 46, 49 (2d Cir.1987) (internal citations and quotations omitted). Courts are particularly reluctant to grant new trial motions where the newly discovered evidence consists of a witness recantation as such recantations are "'looked upon with the utmost suspicion.'" *United States v. Gallego,* 191 F.3d 156, 166 (2d Cir.1999) (quoting *United States v. Di Paolo,* 835 F.2d at 49 (citations omitted)). Here, Overhiser never recanted her trial testimony to the district attorney or to the police. The sole proof of the alleged "recantation" is the uncorroborated[4] affidavit of an arguably biased witness, Shaut's mother. I am unable to find that Ackley's uncorroborated affidavit, standing alone, suffices to establish that a recantation by Overhiser actually occurred.

Moreover, Shaut has not submitted evidence sufficient to establish that Overhiser's testimony was perjured. *See Ortega,* 333 F.3d at 107 (even though court found that recantation was not credible, it proceeded to analyze whether recanting witness had perjured himself at trial). Shaut claims that Overhiser's Grand Jury testimony and statements to the police following the stabbing establish that she initially

4. Shaut claims that there is "evidence independent of [Ackley's affidavit]" that establishes that Overhiser did not testify truthfully at trial. Pet'r Mem. at 20. He argues that Overhiser's claim that he stated "Where's the [n-word], bitch?" is belied by the fact that he previously had seen Farrow, who is black, outside the trailer. Therefore, Shaut argues, it is "incomprehensible that petitioner would have inquired as to the whereabouts of Mr. Farrow when he already knew." Pet'r Mem. at 20. I do not find that it defies common sense for Shaut to have made such a statement; in light of the evidence at trial, it is more likely is that Shaut thought there was another individual in the trailer, and he believed that Overhiser was concealing him.

Shaut further asserts that claims that his mother's affidavit and the affidavit of his friend Scotty Herrick ("Herrick") submitted in support of his second C.P.L. § 440.10 motion prove that he and Overhiser were having a sexual relationship and that Shaut was paying rent at the trailer. Pet'r Mem. at 21. First of all, I must note the inherent unreliability of Ackley's and Herrick's statements. Presumably, Ackley's and Herrick's allegations of a relationship between Shaut and Overhiser are not based upon their actual knowledge, but upon what they were told by Shaut. Thus, these affidavits similarly do not provide independent verification that Overhiser testified falsely at trial.

admitted to being involved in a sexual relationship with Shaut. Therefore, he argues, the statements are inconsistent on their face with her trial testimony. As discussed above, I have reviewed the whole of Overhiser's Grand Jury testimony, as well as her statement to the police, and I find that the contradictions claimed by Shaut do not exist.

Even if I were to accept Ackley's allegations as true, they do not constitute newly discovered evidence sufficient to warrant a new trial. A claim " 'based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' " *Ortega v. Duncan,* 333 F.3d 102, 108 (2d Cir.2003) (quoting *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)) (citing *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), for the proposition that evidence that could not have been presented in the state proceedings "must bear upon the constitutionality of the applicant's detention"); *see also United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[C]onstitutional error occurs … only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.").

■ Shaut misapprehends the relevance of the assertions in Ackley's affidavit in determining whether the trailer should be deemed his "dwelling" such that he was under no duty to retreat. Contrary to Shaut's assertions, the possibility that he was involved in a sexual relationship with Overhiser at the time of the incident simply does not establish that the trailer where Overhiser lived was Shaut's "dwelling" for purposes of establishing the defense of justification. Nor does the fact that Shaut may have paid the July rent at the trailer prove that he still resided there.

Article 35 of the Penal Law, which addresses the defense of justification, provides no definition of the term "dwelling." The term is defined for purposes of burglary and related offenses in Penal Law § 140.00(3) as "a building which is usually occupied by a person lodging therein at night." In Shaut's voluntary statement to the state troopers, he stated: *"I moved out [of the trailer] about a month [prior to the incident.] I moved back into my present address of Manor Village in Bath, New York."* Trial Tr. at 369 (emphasis supplied). In Shaut's C.P.L. § 440.10 motion, and this petition, Shaut avers that "he got an apartment at Manor Village" because he had lost his driver's license for a year and the apartment complex was closer to his place of employment. According to Shaut, he spent only "two nights a week" at Overhiser's trailer. By Shaut's own statements, then, the Manor Village apartment was the location "usually occupied" by Shaut at night. Thus, the apartment, not the trailer, was Shaut's "dwelling" for purposes of the justification defense.

The Second Circuit has stated that "[o]nly recantations of material testimony that would most likely affect the verdict rise to the level of a due process violation, if a state, alerted to the recantation, leaves the conviction in place." *Sanders v. Sullivan,* 863 F.2d 218, 225 (2d Cir.1988); *accord Ortega v. Duncan,* 333 F.3d at 108. Even accepting Ackley's allegations as true, which this Court explicitly does not find to be the case, they would not have resulted in Shaut being acquitted based on a justification defense. Shaut's claim based on newly discovered evidence of alleged prosecution witness perjury is without merit.

### Trial Court's Failure to Charge Lesser Included Offenses

 Shaut contends that he was denied a fair trial by the court's refusal to charge second degree manslaughter and criminally negligent homicide as lesser included offenses to the charge of murder, "especially in light of the element of intoxication present in this case." Pet'r Mem. at 39. This claim is not cognizable in a federal habeas review because it does not implicate a federal constitutional right. *See Estelle v. McGuire*, 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Neither the Supreme Court nor the Second Circuit has held that a court's failure to instruct a jury on lesser included offenses in a non-capital case is a constitutional issue that may be considered in a habeas petition. *Knapp v. Leonardo*, 46 F.3d 170, 179 (2d Cir.1995); *accord Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir.1996) (*per curiam*); *see also Parks v. People*, 2003 WL 1396440, at *1 (S.D.N.Y. Mar. 19, 2003). Thus, Shaut is not entitled to habeas relief on this claim.

### Trial Court's Error in Instructing the Jury on Voluntariness of Shaut's Confessions

At the close of trial, neither defense counsel nor the district attorney requested that the voluntariness charge be given. Nevertheless, the court instructed the jury to disregard Shaut's statements to the police unless the prosecution provided beyond a reasonable doubt that they were made voluntarily. Trial Tr. at 529–35. Shaut argues that this instruction denied him a fair trial in light of defense counsel's reliance upon the statements to support Shaut's justification defense. Pet'r Mem. at 42.

 On direct appeal the Appellate Division dismissed the claim, holding that [d]efendant likewise has not preserved for our review his contention that the court erred in giving a voluntariness instruction (*cf. People v. Cefaro*, 23 N.Y.2d 283, 288–289, 296 N.Y.S.2d 345, 244 N.E.2d 42 (1968)). Although defendant did not request the instruction, he did not ask that it not be given, nor did he object to it once it was given.

*People v. Shaut*, 261 A.D.2d at 961, 690 N.Y.S.2d 372. Because the Appellate Division "explicitly invoke[d] a state procedural bar rule as a separate basis for decision," this claim is subject to a procedural default. *Harris v. Reed*, 489 U.S. at 264, 109 S.Ct. 1038. The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05(2), is an adequate and independent state ground. *See Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), *cert. denied*, 502 U.S. 883, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991). The Appellate Division therefore was justified in relying on New York's contemporaneous objection rule to hold that Shaut's claim was not preserved for review.

Federal habeas review of this procedurally defaulted claim is only possible if Shaut "can show cause for the default and prejudice attributable thereto," or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 485, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (internal quotations omitted) (citation omitted). The "fundamental miscarriage of justice" exception, which requires that petitioner make a "colorable showing of factual innocence," *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (internal quotations omitted) (citation omitted), is not applicable here.

■ Although Shaut does not specifically plead cause or prejudice to excuse the default in his petition, he asserts an ineffective assistance of counsel claim premised on his attorney's failure to object to the court's voluntariness instruction. A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel. *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir.2001) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) and *Murray v. Carrier*, 477 U.S. at 488–89, 106 S.Ct. 2639). Stated another way, although attorney effectiveness can constitute cause for a procedural default, it must be more than mere error.

As an initial matter, I note that the trial court's issuance of the voluntariness instruction was not necessarily erroneous in light of the evidence presented that raised an issue as to the voluntariness of Shaut's statements. Shaut's statements were given shortly after he had been told to lie down on the ground by a police officer who stood over him with a shotgun. Tr. at 331. Moreover, in Shaut's memorandum in support of his habeas petition, he asserts that the troopers' notes do not reflect *Miranda* warnings until 10:59 p.m., although Shaut began making admissions at 10:42 p.m. "all before any mention of warnings." Pet'r Mem. at 4.

■ In addition, as respondent correctly notes, counsel's cross-examination emphasized that Shaut was distraught during the interview, *id.* at 375; that Shaut was never given the opportunity to "put things down in his own words", *id.* at 374, 376; the absence of an attorney during the questioning, *id.* at 375; the incompleteness of the written statement; *id.* at 377, and the fact that the interview took place after the arrest and while Shaut was handcuffed, *id.* Defense counsel's cross-examination therefore raised issues with regard to the voluntariness of the statement, and his failure to object to the instruction may have been a tactical choice. On this record, counsel's acts do not amount to objectively unreasonable performance.

Ultimately, however, Shaut's claim falters because he cannot show any prejudice resulting from his attorney's failure to object to the challenged instruction. It is evident that the jury considered Shaut's statements to the police and credited his claim that he did not intend to kill Farrow because it convicted him of the less serious offense of first degree manslaughter rather than intentional murder. Consequently, the alleged error by defense counsel in this regard does not suffice to establish attorney ineffectiveness so as to excuse the state court procedural default. This claim is therefore barred from habeas review.

### Prosecutorial Misconduct

Shaut asserts a claim of prosecutorial misconduct premised in part upon the prosecutor's alleged presentation of false evidence at Shaut's trial and violation of the disclosure mandates of *Brady* and *Rosario*. As discussed at pages 11–14, *supra*, I conclude that those two claims are without merit. Thus, to the extent that Shaut's prosecutorial misconduct claim is based upon those grounds, it is unfounded and warrants dismissal.

Shaut further contends that the district attorney improperly made (1) "personal attacks upon defense counsel"; (2) "statements about how a defense witness would have testified differently if defense counsel had not withheld facts from him"; and (3) "numerous other statements about the petitioner and the role of a defense attorney." Pet'r Mem. at 44. However, these remaining examples of purported miscon-

duct provide no better support for Shaut's claim.

■ The standard for reviewing allegations of prosecutorial misconduct is "'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). A prosecutor's allegedly improper conduct justifies habeas corpus relief only where the remarks so infected the trial with unfairness that the resulting conviction constitutes a denial of due process. *Donnelly,* 416 U.S. at 643, 94 S.Ct. 1868. A federal court must distinguish between "'ordinary trial error of a prosecutor and that sort of egregious misconduct ... amounting to a denial of constitutional due process.'" *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly,* 416 U.S. at 647–48, 94 S.Ct. 1868).

Here, the prosecutor's comments during summation plainly did not rise to level of misconduct. "The prosecutor's comments must be evaluated in light of the defense argument that preceded it." *Darden,* 477 U.S. at 179, 106 S.Ct. 2464. The "personal attacks upon defense counsel" apparently refer to the district attorney's comments during his summation that the function of the defense attorney is to "cloud the issues." Pet'r Mem. at 28. For instance, the district attorney stated that "the biggest effort to cloud this issue, confuse you and shift your focus away is to use the term self-defense." Tr. at 484; *see also id.* at 498, 501. Respondent asserts that the prosecutor's statements "were both permissible and warranted" under the circumstances of the case. Respondent's Habeas Memorandum ("Resp't Mem.") at 17.

■ I note that during defense counsel's opening statement, he stated that "the Government is going to throw it [*i.e.,*

the allegation that Shaut threatened Overhiser] out and *try to cloud things* . . . ." Tr. at 51–52 (emphasis supplied). The prosecutor's remarks thus were invited by and in response to defense counsel's previous argument to jury and were not improper. *See, e.g., United States v. Young,* 470 U.S. 1, 12–13, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

Shaut further claims that the prosecutor improperly "denigrat[ed]" the forensic witness for the defense by suggesting on summation that if he had reviewed the autopsy records more carefully, he would not have testified for the defense. Pet'r Mem. at 28. Shaut argues that this constituted "improper bolstering by the prosecutor of his own medical witness." *Id.*

During summation, defense counsel disparaged the credentials of the medical examiner, stating that she was a "nice person," but that she did not have "that much experience." Tr. at 481. "Prosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility." *United States v. Perez,* 144 F.3d 204, 210 (2d Cir.1998) (citing *United States v. Perry,* 643 F.2d 38, 51 (2d Cir.1981)). Moreover, the prosecution is entitled to rebut arguments raised by the defense on summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" *Pina v. Kuhlmann,* 239 F.Supp.2d 285, 291 (E.D.N.Y.2003) (no misconduct where prosecutor argued that petitioner's testimony was "ridiculous"; "utter nonsense", and "ma[de] no sense") (quoting *Readdon v. Senkowski,* 1998 WL 720682, at *4 (S.D.N.Y. Oct. 13, 1998) (citation omitted)).

Lastly, Shaut contends that the prosecutor told "a bold face lie" when he made the following comment regarding the night of

the stabbing: "He plans a mission. He's got his military training." Tr. at 492. Shaut claims that he has no military training, stating that he was just a "maintenance man on a naval ship." Pet'r Mem. at 46. According to the pre-sentence report, Shaut enlisted in the United States Navy for two years; I find it doubtful that a person could spend two years in a branch of the military and receive instruction only in matters of plumbing.

 In any event, the prosecutor's comment represents a permissible inference supported by the facts introduced into evidence at trial. Shaut told the police that he "had to know what was going on" with Overhiser so he "packed a duffle bag with a buck knife with a six or seven inch blade" along with a "12 pack of Milwaukee Best beer and a pack of Marlboro cigarettes in a box." After he had a cab drop him off, Shaut trekked a half-mile through the marsh to Overhiser's trailer. Tr. at 369–70. Moreover, he was dressed all in dark clothing and wearing combat boots, even though it was a warm August night. *Id.* at 339. Therefore, it was not improper for the prosecutor to refer to Shaut's military experience and to describe his actions that evening as being suggestive of a "mission." Shaut's prosecutorial misconduct claim is without merit and provides no basis for habeas relief.

### Erroneous Denial of Leave to Appeal by the Appellate Division

Shaut argues that the trial court did not issue a "written decision" when it denied either of his C.P.L. § 440.10 motions, and therefore the Appellate Division improper-ly denied him leave to appeal. According to Shaut, the Appellate Division "could not possibly conclude that there existed no question of fact or law for review since that conclusion would have to have been based upon the nonexistent written decision of the trial court." Pet'r Mem. at 34.

County Court denied both of Shaut's C.P.L. § 440.10 motions in written orders, albeit summary ones. However, the Appellate Division did not determine that leave to appeal was unwarranted based solely upon the trial court's summary denial. Rather, the Appellate Division would have considered the trial record as well as the parties' previous submission. Shaut has established no constitutional violation stemming from the appellate court's denial of leave to appeal, and this argument provides no basis for habeas relief.

### Ineffective Assistance of Trial Counsel

I apply the familiar two-prong *Strickland* test to Shaut's allegation that he was denied the effective assistance of counsel. To prevail, Shaut must show 1) that the conduct of his trial counsel fell below "an objective standard of reasonableness" based on "prevailing professional norms," and 2) "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Shaut offers a laundry list of reasons as to why his trial counsel was constitutionally ineffective, but none of them is meritorious. In fact, most of the alleged omissions by counsel are not even errors at all.[5]

---

5. Shaut asserts in his supporting memorandum of law that "one attorney on the defense team [submitted an affidavit] that the other one did not provide effective assistance of counsel." Pet'r Mem. at 29. Shaut was represented primarily by retained counsel Peter Degnan, Esq. ("Degnan"); Degnan's father, Edward Degnan, Esq. ("Degnan, Sr."), acted as co-counsel. The affidavit to which Shaut refers was submitted by Degnan, Sr. in support of a November 1997 motion to set aside the verdict on the basis of prosecutorial misconduct. *See* 2000 C.P.L. § 440.10 Motion at 22, Respondent's Exhibits. I have reviewed

### 1. Failure to Object During Prosecutor's Summation

Shaut's criticism of counsel's failure to object at various times during the district attorney's summation is unfounded since, as discussed above, the prosecutor's remarks were not objectionable. *See* pages 21–24, *supra.*

### 2. Failure to Pursue the Defense of Intoxication

 Counsel's election not to pursue the defense of intoxication is a tactical decision which the reviewing court ordinarily may not second-guess. *McKee v. United States,* 167 F.3d 103, 106 (2d Cir. 1999) (citing, *e.g., Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). Moreover, Shaut's statement to the police following the incident completely negates the possibility of an intoxication defense. When asked by the trooper if he was under the influence of any substance that would impair his judgment, Shaut replied, "I drank some beers but I'm well aware of what is going on and can answer your questions." Tr. at 368.

### 3. Failure to Request Charge Instructing the Jury to Draw No Adverse Inference From Defendant's Failure to Testify

 Shaut next faults his trial counsel for not requesting a charge that the jury could not draw an adverse inference from Shaut's failure to testify. C.P.L. § 300.10(2) provides that "[u]pon request of a defendant who did not testify in his own behalf, but not otherwise, the court must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn." In the absence of a request by Shaut's counsel for a "no adverse inference" charge, therefore, it was not error for the trial court to omit such a charge.[6] Counsel for a non-testifying defendant could decide, as a matter of sound trial strategy, that the better course is to refrain from having the trial court give the charge so as not to call undue attention to the defendant's failure to testify.

Here, counsel's failure to request the charge was at worst a mere error in judgment which does not warrant setting aside the verdict in Shaut's criminal proceeding because it does not undermine "confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *accord Rivera v. Duncan,* 2001 WL 1580240, at *19 (S.D.N.Y. Dec. 11, 2001) ("While trial counsel may be faulted for promising during *voir dire* that the trial judge would eventually give a no adverse inference charge [and then failing to request such a charge] the matter does not amount to ineffective trial counsel.").

In any event, I note that the trial judge instructed the jury during his opening and closing charges that the defendant is "not required to offer evidence in his defense," Tr. at 11, and "never has to prove anything," *id.* at 13; 519. The court thereby communicated to the jury the precept embodied in the Fifth Amendment that grants a criminal defendant the right not

---

the affidavit of Degnan, Sr., and I am unable to discern in it any criticism whatsoever of the younger Degnan's performance at trial. Shaut's contention in this regard is unsupported by the record.

**6.** *See, e.g., People v. Vereen,* 45 N.Y.2d 856, 857, 410 N.Y.S.2d 288, 289, 382 N.E.2d 1151 (1978); *see also, e.g., People v. La Dolce,* 196 A.D.2d 49, 54, 607 N.Y.S.2d 523, 526 (4th Dept.1994) ("[a]bsent a request by defendant, it is constitutional error to give" a no inference charge); *People v. Allan,* 192 A.D.2d 433, 434, 596 N.Y.S.2d 793, 794 (1st Dept. 1993) ("it was error for the judge to have charged the jury, in the absence of defendant's request, with respect to defendant's election not to testify").

to testify. *See Carter v. Kentucky*, 450 U.S. 288, 305, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981).

### 4. *Failure to Investigate*

Shaut further claims that his counsel "failed to properly investigate the facts of this case and talk to the witnesses whose names petitioner had provided." As an initial matter, I note that Shaut does not substantiate his claim by providing the names of the witnesses whom counsel did not interview. Shaut alleges that these individuals would have testified that he was having a sexual relationship with Overhiser, spending nights at the trailer, and providing rent money to her between July 3 and August 12, 1996, thereby "establish[ing] that the trailer was petitioner's residence[.]" Pet'r Mem. at 29. Shaut misunderstands the relevance of these factors with regard to determining whether the trailer was his "dwelling" for purposes of the justification defense. Even assuming that these unnamed witnesses would have testified accordingly, this evidence would not have proved that the trailer was Shaut's dwelling for the purposes of the justification defense. *See* pages 17–18, *supra*.

### 5. *Failure to Object to Voluntariness Charge*

As discussed at pages 20–21, *supra*, I do not find that counsel's failure to object to the court's instruction to the jury concerning the voluntariness of Shaut's statements amounted to constitutionally deficient representation. Shaut therefore is not entitled to habeas relief on this ground.

### 6. *Other Trial Errors*

Counsel's failure to object to the trial court's charge on intent similarly was not error since the instruction was entirely proper and did not violate the proscrip-

tions of *Sandstrom*. *See* pages 10–11, *supra*. Even assuming the truth of Shaut's claim that his attorney told him be quiet in a rude manner, *see* Pet'r Mem. at 29, this would not amount ineffective assistance. Shaut also claims that his attorney was deficient because he "failed to move for a mistrial." *See id.* Shaut does not identify what the basis of such a motion should have been, nor do I find that anything occurred during the course of the proceedings which would have warranted a mistrial. That ground similarly is without merit.

After reviewing the entire record in this matter, I conclude that Shaut's counsel provided more than adequate representation at trial. Counsel pursued a cogent defense strategy, arguing that Shaut was justified in using deadly force to ward off Farrow's attack and that he did not intend to cause the Farrow's death. Counsel's cross-examination of witnesses and his opening and closing statements were carefully constructed to support the chosen defense theory. In addition, he successfully moved to dismiss the felony murder and burglary counts of the indictment after the close of the People's case. Shaut clearly received the effective assistance of counsel to which he was entitled under the Sixth Amendment.

## CONCLUSION

For the foregoing reasons, the petition of Brian S. Shaut for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because Shaut has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253.

IT IS SO ORDERED.